UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RUTH ANNE CAMPBELL, <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | CAUSE NO.: 3:20-CV-414-TLS |

## OPINION AND ORDER

The Plaintiff Ruth Anne Campbell seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits. For the reasons set forth below, the Court finds that reversal and remand for further proceedings is required.

## PROCEDURAL BACKGROUND

On October 9, 2014, the Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of October 9, 2014. AR 200, ECF No. 17. After the claim was denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on April 5, 2017. *Id*. at 37. On May 9, 2017, the ALJ issued a written decision, finding the Plaintiff not disabled, *id.* at 10–19, which the Appeals Council upheld on April 9, 2018, *id.* at 1–3. The Plaintiff filed an appeal with the United States District Court for the Northern District of Indiana, and the case was remanded for further proceedings. *Id.* at 818–27. On January 8, 2020, a second hearing was held in front of a different ALJ, *id.* at 765–98, and on January 23, 2020, the ALJ issued an unfavorable decision, *id.* at 739–56. The Appeals Council did not assume jurisdiction of this case, and the Plaintiff did not file any exceptions to the ALJ's

decision with the Appeals Council. Thus, the ALJ's January 23, 2020 decision is the final decision of the Commissioner. *See id.* at 737 (explaining that the ALJ's decision becomes final 61 days after the decision notice). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On May 21, 2020, the Plaintiff filed her Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision. The Plaintiff filed an opening brief, the Commissioner filed a response, and the Plaintiff filed a reply. ECF Nos. 19–21.

## THE ALJ'S DECISION

For purposes of disability insurance benefits, a claimant is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of October 9, 2014, through her date last insured of March 31, 2019. AR 742.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe

impairments of anxiety, degenerative disc disease of the cervical and lumbar spine, depression, fibromyalgia, and tear of the supraspinatus tendon in the right shoulder. AR 742.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that he considered Listings 1.02, 1.04, 12.04, and 12.06. AR 744.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she had additional limitations. The claimant could frequently reach with the dominant right upper extremity. She could occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, and crouch. She could never climb ladders, ropes, or scaffolds. She could never crawl or work at unprotected heights. The claimant was limited to simple work-related decisions and simple, routine tasks with no assembly line work or strictly enforced daily production quotas. She could never interact with the general public but could occasionally interact with coworkers and supervisors.

AR 747.

The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff was unable to perform any past relevant work. AR 753.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because the Plaintiff can perform significant jobs in the national economy of routing clerk, marking clerk, and collator operator. AR 754–55. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (citations omitted); *see also Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

Remand for further proceedings is required in this case because of misstatements of fact throughout the decision, both as to the Plaintiff's impairments as well as in weighing the opinion evidence, which prevent the Court from conducting a meaningful review of the residual functional capacity assigned by the ALJ.

The residual functional capacity ("RFC") is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-

related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

First, the weight given to the state agency medical and psychological consultants is not supported by substantial evidence. The ALJ gave "some weight" to the opinions of the state agency medical consultants and "great weight" to the opinions of the state agency psychological consultants. AR 750, 751. The ALJ justified the weight given the opinions largely because they "were able to review most of the claimant's records, allowing them to obtain a comprehensive, longitudinal assessment of the claimant's . . . functioning." *Id.* This statement is factually incorrect.

The state agency consultants were not able to review "most" of the Plaintiff's records because the medical reviewers gave their opinions in April and May 2015, *id.* at 116, and the psychological consultants last reviewed the record on May 18, 2015, based on the most recent evidence of April 30, 2015, *id.* at 114. The Plaintiff's alleged onset date was October 9, 2014. *Id.* at 102. Thus, the state agency reviewers were able to review 162 pages of records, most of which predate the Plaintiff's alleged onset date. *See id.* at 358–520. However, at the time of the hearing

in January 2020, there were 950 pages of medical records covering four and a half years of treatment not available to the state agency reviewers. *See id.* at 358–735, 1028–1601. The records that were not available to the state agency reviewers include, for example, almost all of the Plaintiff's treatment with her therapist Cynthia Anderson, *see id.* at 647–67, 1477–1601; the majority of her routine psychiatric treatment with extensive medications and medication adjustments, *id.* at 622–43, 671–82, 1028–96; a full-scale diagnostic assessment and neurological testing by neuropsychologist Dr. Thomas Allen over the course of three visits, *id.* at 570–88; an x-ray of the Plaintiff's cervical spine showing mild to moderate disc disease, *id.* at 728; an MRI of the Plaintiff's shoulder showing a full thickness tear as well as prominent marrow edema, *id.* at 717; an MRI of the lumbar spine showing disc bulges and moderate facet degeneration at multiple levels, *id.* at 720; x-rays of the bilateral hands showing moderate degenerative changes, *id.* at 1336, 1338; a stress test that was terminated due to leg pain and shortness of breath, *id.* at 1279–80; and documentation of severe fatigue and low B12 despite B12 injections, *id.* at 1072.

The opinions of state agency doctors "can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received [by] the [ALJ] . . . that was not before the State agency." SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996); *see Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010). Here, the record contained extensive new medical findings not considered by the state agency medical and psychological reviewers in 2015, many of which appear inconsistent with those opinions. Nevertheless, the ALJ relied on those state agency opinions to formulate the RFC even though no medical opinion considered the new medical evidence. *See McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) ("We have said repeatedly that an ALJ may not 'play[] doctor' and interpret 'new and potentially decisive

7

medical evidence' without medical scrutiny." (citing *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014))); *Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018). Thus, remand is required for proper consideration of the state agency medical opinions and the extensive subsequent medical evidence that appears to support the greater limitations asserted by the Plaintiff and contrary to the RFC.

Second, the ALJ's discussion of the evidence contains numerous factual errors, which directly impacts the RFC. As a result, the ALJ has failed to build an accurate and logical bridge between the evidence and the decision, necessitating remand. *See Beardsley*, 758 F.3d at 837 (recognizing that remand may be required "if the ALJ based the decision on serious factual mistakes or omissions"). For example, the ALJ found at step two that the Plaintiff's hand pain was not a severe impairment in part because a physical examination documenting abnormal hand findings was made after the date last insured, which is incorrect. *See* AR 742. The Plaintiff's date last insured was March 31, 2019, and the abnormal hand findings were first reported almost two years earlier on examination in April and May 2017. *Id.* at 1263, 1265. The Plaintiff was seen for a rheumatology consultation, in part, for bilateral hand stiffness, and on both dates the examinations found tenderness in her carpometacarpal joint and Heberden nodes bilaterally. *Id.* at 1263, 1267. In fact, the ALJ references the x-rays of her right and left hands in April 2017 that showed moderate degenerative changes within numerous joints. *See id.* at 742, 1335, 1336.

In relation to her hands, the ALJ also asserts that "medical professionals overwhelmingly determined she had normal extremity strength, reflexes, and sensations." *Id.* at 742. However, most of the records cited by the ALJ are from a period of time prior to when she first began complaining of hand pain in 2017 or when she was seeking treatment for another reason, such as an emergency room visit for a suicide attempt. *See id.* at 397, 416–19, 459, 702, 709, 730. Of the

8

three records the ALJ cited during the period the Plaintiff began experiencing hand problems, one is an October 2017 visit for flu-like symptoms, *see id.* at 1370; one is for the May 2017 visit with the complaint of bilateral hand stiffness, the doctor's review of the x-rays showing degenerative changes, and the examinations showing tenderness and Heberden's nodes, *id.* at 1263; and the third is for an April 26, 2019 visit that continues to show the Plaintiff's complaints of bilateral hand pain and examination findings of Heberden's node in both hands and bilateral localized tenderness, *id.* at 1212. The ALJ's consideration of the Plaintiff's hand pain is factually inaccurate and not supported by the evidence of record.

Another example of error in reviewing the record evidence is the misstatements regarding the Plaintiff's mental health records. The ALJ states that the Plaintiff's healthcare providers "typically" or "overwhelmingly" described the Plaintiff "as pleasant, cooperative, and communicative with normal mood, affect, speech, eye contact, and behavior and no signs of agitation, irritability, or anxiety." *Id.* at 746, 751. As noted by the Plaintiff, all of the records cited by the ALJ are either of highly questionable relevance or directly contradict his statement. First, many records cited by the ALJ are related to visits to the Plaintiff's primary care physician for shoulder pain, dry cough, hypertension, and B12 deficiency; a one-time consultative examination; a visit to the emergency room for flu-like symptoms; cardiology follow-up visits with no mental status examination; and a visit two months prior to the alleged onset date. *See id.* at 366, 417, 419, 702, 1125, 1225, 1233, 1302, 1383, 1427.

The remaining cited evidence directly contradicts the ALJ's statement and includes a one-time psychological consultative examination where the Plaintiff was found to have below average memory and presented with mild overt anxiety and flat affect, *id.* at 517; a visit with Michele Loughran where the Plaintiff reported that she still felt down but was "a little more

9

stable," but was still very anxious, and the mental status exam was positive for depressed mood, intermittent anxiety, impaired insight, and mildly impaired judgment, *id.* at 528, 530–31; observations from diagnostic testing by Dr. Thomas Allen that the Plaintiff misremembered what day it was, had monotone speech, displayed tearful affect and depressed mood, lacked energy, and had reserved interactions and below average concentration, *id.* at 573; two psychiatric visits where the Plaintiff was observed to display depressed mood, intermittent anxiety, and mild impaired judgment, *id.* at 631–32, 636–37; a psychiatric visit where she was observed to be intermittently panicky, distractible, distracted, and with mild impaired judgement, *id.* at 687–88; and another psychiatric visit where she displayed depressed mood, intermittent anxiety, and mild impaired judgment, *id.* at 692–93.

There is nothing overwhelmingly normal about these clinical findings. Notably, the ALJ's decision contains no discussion of the Plaintiff's extensive therapy visits and omits any reference to the majority of her visits to her psychiatric medication provider. The record shows that the Plaintiff was consistently observed to display abnormal findings in mental status examinations including flat or reserved affect, depressed/anxious/sad mood, slow speech, disheveled appearance, a guarded thought process, suicidal thoughts, tearfulness, withdrawal, minimizing behaviors, anxious behaviors, withdrawal, lack of insight, and impaired judgment. *See id.* at 499, 501, 502, 511–512, 517, 523–26, 530–31, 626–627, 1578–1601.

These errors alone require remand. In addition, as argued in detail by the Plaintiff, the ALJ made numerous factual errors and misstatements regarding the evidence of record in weighing the opinions of her treating providers. *See* Pl. Br. 16–21. For example, the ALJ gave "little weight" to the March 2016 opinion of neuropsychologist Dr. Allen because it "appears to have been based on a one-time examination of the claimant," AR 752; however, Dr. Allen's

10

opinion was based on three separate visits for diagnostic assessment and neurological testing on November 18, 2015, February 29, 2016, and March 8, 2016, *id.* at 572. The Commissioner offered no specific response to these arguments regarding the misstatements of record related to the opinions of the Plaintiff's treating providers. The ALJ also made several misstatements of record in weighing the Plaintiff's subjective statements, such as minimizing her suicide attempt by suggesting that she had been under the influence of alcohol when she attempted suicide, *id.* at 750, when the record shows that the Plaintiff used alcohol and other drugs together to attempt suicide, *see id.* at 452, 491. Another example is the ALJ stating that the Plaintiff had improved on her medications, *id.* at 750, when the record shows that her medications were adjusted or switched at almost every visit to psychiatry during the same time period. *See id.* at 531, 536, 627, 632, 637, 642, 1031, 1036, 1041, 1046, 1051, 1055, 1060, 1075, 1080, 1090, 1095. Because of the issues necessitating remand, the Court need not consider the Plaintiff's remaining arguments.[1]

Finally, the Plaintiff asks the Court to reverse and remand for an award of benefits, or, in the alternative, for a new hearing and decision. "An award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005)). Although the significant misstatements of the record by the ALJ are disconcerting, the Court cannot say that an immediate award of benefits is appropriate in this case.

---

[1] The Court notes an apparent inconsistency at step two regarding fibromyalgia. The step two heading lists fibromyalgia as a severe impairment. AR 742. However, the analysis contains a detailed explanation why fibromyalgia is not a medically determinable impairment. *Id.* at 743.

11

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 19] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion. The Court DENIES the Plaintiff's request to award benefits.

SO ORDERED on March 30, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT